

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00203-CR

_____


LONNIE WAYNE MITCHELL, Appellant

V.

THE STATE OF TEXAS, Appellee



On Appeal from the County Court
Upshur County, Texas
Trial Court No. 34,419



Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

It is undisputed that Lonnie Wayne Mitchell, in a drunken[1] state, was found passed out in a truck stuck in a ditch beside a public road. How he got there—whether driving or being driven—is the subject of conflicting testimony. Mitchell appeals his jury conviction[2] of driving while intoxicated (DWI) on the basis that the evidence is insufficient to establish that he drove the truck to that location while intoxicated. Because legally sufficient evidence established that, while intoxicated, Mitchell drove the vehicle into the ditch, we affirm the trial court's judgment.

In evaluating legal sufficiency of the evidence supporting Mitchell's DWI conviction, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of DWI beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We examine legal sufficiency under the direction of *Brooks*, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate

---

[1]Mitchell had reportedly downed half of a 1.75-liter bottle of whiskey; the half-full bottle was found near his feet in the truck.

[2]The trial court ordered a one-year county jail sentence for Mitchell, suspended the sentence, placed Mitchell on community supervision for eighteen months, and assessed him a $1,800.00 fine.

facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008); *see also Vega v. State*, 267 S.W.3d 912, 916 (Tex. Crim. App. 2008). Under the hypothetically correct jury charge, Mitchell committed the offense of DWI if (1) he (2) operated (3) a motor vehicle (4) in a public place (5) while intoxicated. TEX. PENAL CODE ANN. § 49.04 (West 2011). Mitchell admits that he was "obviously intoxicated." His only challenge on appeal questions whether he operated the motor vehicle.[3]

The evidence reveals this. Concerned motorist William Thorpe found the truck in a ditch and stopped to investigate. He found Mitchell "lying across the seat" "passed out" with his head on the passenger-side seat. Thorpe immediately called 9-1-1 and was told to rouse Mitchell while hiding the nature of the emergency call for fear that Mitchell would attempt escape. Pursuant to operator instructions, Thorpe startled Mitchell, who "sat up on the driver's side of the truck." When asked if he needed assistance, Mitchell "said he was all right. He had just—was driving down the road and eased into the ditch." Mitchell's admission that he was driving, and his plea to Thorpe to refrain from calling the police were recorded on the clandestinely placed 9-1-1 call—a

---

[3]Mitchell was found on a public road. Mitchell's claim on appeal focuses on who drove the vehicle to its resting place, not whether the driving occurred on a public road.

3

recording admitted into evidence. Thorpe told Mitchell he was on the phone with a friend who would help pull the truck from the ditch. Mitchell responded, "I'd appreciate you getting me out and I'd go real slow like I was before."

The evidence further reveals that Officer Marc Nichols arrived on the scene to discover Mitchell still lying "across the seat with his feet situated towards the driver's side in the floor." Mitchell admitted to Nichols that he was in an "obviously" drunken state. Mitchell's walking cane was retrieved from "the edge of the bed of the truck right there at the driver's door where, as the driver, you could open the door and reach right back and grab a-hold of that cane to step out of the vehicle." When officers initially asked Mitchell how the pickup ended up in the ditch, Mitchell stated, "I turned the corner wrong." Mitchell was arrested for DWI. Trooper Kenneth Ray Nolley, Jr., conducted the inventory of the vehicle. The keys to the truck were within Mitchell's reach in the driver's side door pocket, and a large, half-full bottle of whiskey was at Mitchell's feet next to a shotgun. Mitchell's blood-alcohol level at the time was 0.28 grams of alcohol per 100 milliliters of blood.

Despite this evidence, Mitchell argues that conflicting evidence establishes he was not the driver. After Mitchell's admission that he was driving, he later recanted and claimed, "I wasn't driving. They left me here." He pointed out that the keys were not in the ignition. His stepdaughter, Dawanna Jarman, testified that she drove Mitchell to his friend Ron Mullins' house

4

because "[h]e did not want to drink and drive."[4]   Both Jarman and Mullins claimed that she sat in the truck for four hours while the men visited.   Even though it was cold and "drizzling rain," Jarman claimed the men "sat on the back of the tailgate" and "talked some more."   When it was time to leave, Mitchell was helped into the truck, Jarman pulled out of Mullins' driveway, and headed down the road.   She testified that she made a U-turn and got stuck in the ditch because Mitchell had told her he had left his cane.   Jarman testified that, when the truck became stuck, she exited the driver's side of the truck, placed the keys in the door pocket, and started walking for help.   Nichols testified, however, that the driver's side of the vehicle "was positioned up against the ditch" and that "it was not possible to get out the driver's door."   Nichols also noted the presence of Mitchell's ostensibly forgotten cane, hooked onto the bed of the truck.

As the sole judges of credibility of the witnesses and testimony, the jury could have disregarded statements from Jarman and Mullins.   Extrajudicial confessions coupled with corroborating evidence will support a conviction.   *See Rocha v. State*, 16 S.W.3d 1, 4 (Tex. Crim. App. 2000).   Testimony from Thorpe, Nichols, and Nolley; the audio recording of the 9-1-1 phone call; and the video recording of the arrest—containing Mitchell's admissions to driving—could lead a rational jury to find Mitchell was driving the truck.   *See Reynolds v. State*, 744 S.W.2d 156, 158–59 (Tex. App.—Amarillo 1987, pet. ref'd) (evidence sufficient where driver was found alone, with feet on floorboard of driver's seat of car that was half in a ditch and half on road).   The evidence was legally sufficient to support Mitchell's DWI conviction.

_____

[4]Mitchell's ex-wife, Wanda Jarman, testified she gave her daughter permission to drive Mitchell.

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:     August 15, 2011
Date Decided:       September 1, 2011

Do Not Publish